UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON AT SEATTLE

| | |
|---|---|
| KELVIN B. KIRKPATRICK, an individual,<br><br>Plaintiff,<br><br>v.<br><br>KING COUNTY SHERIFF'S DEPUTY STEVEN AZEVEDO, an individual,<br><br>Defendant. | No.<br><br>COMPLAINT FOR DAMAGES |

## I. NATURE OF THE CASE

1.1     King County Sheriff's officers and Sound Transit Fare Enforcement Officers have repeatedly targeted and harassed Kelvin Kirkpatrick, a King County Metro Transit Operator. From September 2014 through January 2015, two King County Sheriff's officers fabricated a story about Mr. Kirkpatrick and reported it, nearly resulting in his termination. However, Mr. Kirkpatrick had recorded the alleged incident with video-recording glasses. This recording disproved the officers' accounts, exonerated Mr. Kirkpatrick, and resulted in the termination of the two King County Sheriff's officers who had targeted him.

1.2     More than four years later, on two occasions in 2019, Fare Enforcement Officers (FEOs) harassed Mr. Kirkpatrick on board the Sound Transit Light Rail. Most recently, on April

COMPLAINT FOR DAMAGES - 1

No. %

11870.00 mh131208

MacDonald Hoague & Bayless
705 Second Avenue, Suite 1500
Seattle, Washington 98104
Tel 206.622.1604  Fax 206.343.3961

15, 2019, FEOs Tatiana Sigurdson and Christopher Lindley approached Mr. Kirkpatrick, while Mr. Kirkpatrick was on duty and in uniform. Mr. Kirkpatrick had just finished his first assigned route and boarded light rail at the University of Washington Station in order to continue his shift by returning to King County Metro Transit's Central Base to start his second route of the day. FEO Lindley asked for proof of payment and Mr. Kirkpatrick presented his King County Metro employee ID badge. King County Metro employee ID badges show the employee's name and photo, and have an embedded ORCA payment chip which provides transit access to King County Metro Transit operators. FEO Lindley scanned the badge with his handheld card-reader, but the reader couldn't read the badge. Mr. Kirkpatrick explained that the payment chip in his badge had malfunctioned and that he had requested a replacement badge from his Metro supervisor. Though FEO Lindley knew that employee ID badges have payment chips and could see that Mr. Kirkpatrick was on duty, FEO Findley asked for Mr. Kirkpatrick's driver's license to "document the interaction." Mr. Kirkpatrick did not present his driver's license but explained to FEO Lindley that his employee ID badge should be sufficient. FEO Lindley then radioed the King County Sheriff's Office to request assistance with "identification." Mr. Kirkpatrick got off the train at the Stadium Station, where King County Sheriff's Deputies Steven Azevedo and Jonathan Gemmet ordered Mr. Kirkpatrick to stop and prevented him from exiting the station. Mr. Kirkpatrick attempted to discuss the reason for the stop with Deputies Azevedo and Gemmet, stating that he was an on-duty King County Metro Transit Operator simply trying to get to work. Without warning, Deputy Azevedo grabbed Mr. Kirkpatrick and forcibly twisted both of his arms behind his back into handcuffs. The deputy's use of force caused injury to Mr. Kirkpatrick's shoulder, which eventually needed surgery to repair.

  1.3 Mr. Kirkpatrick brings this complaint for damages for violations of his Fourth Amendment rights, including but not limited to a warrantless stop without reasonable suspicion, arrest without probable cause, and excessive use of force.

## II. PARTIES

  2.1 Plaintiff Kelvin Kirkpatrick is a citizen of the State of Washington and a resident

COMPLAINT FOR DAMAGES - 2
No. %
11870.00 mh131208

MacDonald Hoague & Bayless
705 Second Avenue, Suite 1500
Seattle, Washington 98104
Tel 206.622.1604  Fax 206.343.3961

of King County.

2.2     Defendant Deputy Steven Azevedo is a citizen of the State of Washington and a resident of King County. At all times relevant, Deputy Azevedo was acting under color of state law, and within the scope of his duties as a King County Sheriff's Deputy.

### III.     JURISDICTION AND VENUE

3.1     This Court has original subject matter jurisdiction pursuant to 42 U.S.C. § 1983, as well as 28 U.S.C. §§ 1331 and 1343.

3.2     Venue is appropriate in the Western District of Washington pursuant to 28 U.S.C. § 1391 because at least some of the Defendants reside in this judicial district and because the events and omissions giving rise to the claims alleged here occurred within the Western District of Washington.

### IV.     FACTUAL ALLEGATIONS

4.1     Between September 2014 and January 2015, King County Sheriff's Sergeant Lou Caballero and Deputy Amy Shoblom fabricated a story about Kelvin Kirkpatrick, claiming that he shouted at them and used profanity, in an effort to get Mr. Kirkpatrick fired from King County Metro. Sergeant Caballero and Deputy Shoblom retaliated after Mr. Kirkpatrick twice gave critical feedback to superiors about the King County Sheriff's officers assigned to monitor the night-owl shift of King County Metro bus routes, which Mr. Kirkpatrick operated. Because Mr. Kirkpatrick happened to record the alleged incident with Sergeant Caballero and Deputy Shoblom on video, their fabricated story was proven false and both officers were terminated for dishonesty and retaliation. The incident, including Mr. Kirkpatrick's identity, became publicly known and was covered by local and national news.

4.2     On April 2, 2019, Mr. Kirkpatrick tapped his King County Metro employee ID badge, which contains an embedded ORCA payment chip, at the light rail entrance reader and discovered the payment chip was not functioning. Mr. Kirkpatrick had just completed his first shift of the day and boarded light rail to travel back to King County Metro Transit's Central Base to begin his second shift of the day. Around the Capitol Hill Station, Sound Transit Fare

COMPLAINT FOR DAMAGES - 3

No. %

11870.00 mh131208

MacDonald Hoague & Bayless
705 Second Avenue, Suite 1500
Seattle, Washington 98104
Tel 206.622.1604  Fax 206.343.3961

Enforcement Officers (FEOs) Tatiana Sigurdson and Christopher Lindley boarded the train. FEO Sigurdson asked Mr. Kirkpatrick for proof of payment, and Mr. Kirkpatrick provided his King County Metro employee ID badge, explaining that the ORCA chip had malfunctioned. Though Mr. Kirkpatrick was in his uniform and clearly on duty, FEO Sigurdson continued to ask Mr. Kirkpatrick for proof of payment. She then asked to see other identification, and recorded the information from Mr. Kirkpatrick's ID badge. Later that day, Mr. Kirkpatrick requested a replacement ID with King County Metro Transit Chief Becker. Mr. Kirkpatrick continued to follow-up about his defective badge with multiple supervisors over the next twelve days.

4.3   On April 15, 2019, FEOs Christopher Lindley and Tatiana Sigurdson were conducting fare enforcement inspection on a train traveling southbound from Westlake Station. FEO Lindley approached Mr. Kirkpatrick, who had just finished his assigned route and was returning to Metro Transit's Central Base to begin his next assigned route of the day.

4.4   FEO Lindley asked Mr. Kirkpatrick for proof of payment. Mr. Kirkpatrick provided his King County Metro employee ID badge, explaining again that the embedded ORCA payment chip was not functioning, and his supervisors were in the process of replacing his ID badge. FEO Lindley repeatedly scanned the badge with his card-reader, but the reader could not recognize the defective ORCA chip.

4.5   FEO Lindley then demanded to see Mr. Kirkpatrick's driver's license, claiming that the driver's license was needed to document their interaction regarding Mr. Kirkpatrick's lack of payment for Sound Transit. Mr. Kirkpatrick replied that his employee ID badge was sufficient and reiterated that he was in the middle of his shift and was doing what his Metro Transit supervisors told him.

4.6   FEO Lindley then noticed what he thought was a small camera disguised as a pen in Mr. Kirkpatrick's shirt pocket and doubled down on his demand for Mr. Kirkpatrick's driver's license. Again, Mr. Kirkpatrick explained that his employee ID badge, which FEO Lindley had looked at multiple times, was sufficient.

4.7   FEO Lindley then radioed the King County Sheriff's Office to request dispatch of

COMPLAINT FOR DAMAGES - 4

No. %

11870.00 mh131208

MACDONALD HOAGUE & BAYLESS
705 Second Avenue, Suite 1500
Seattle, Washington 98104
Tel 206.622.1604  Fax 206.343.3961

deputies to Stadium Station, to assist with "identification." When the train arrived at Stadium Station, FEOs Lindley and Sigurdson followed Mr. Kirkpatrick off of the train and down the platform.

4.8   Just past the platform entry and exit area, King County Sheriff's deputies Steven Azevedo and Jonathan Gemmet approached Mr. Kirkpatrick before he could exit the station, delaying his arrival back at Metro Transit's Central Base where he would begin his next assigned shift.

4.9   Mr. Kirkpatrick repeatedly tried to explain to Deputies Azevedo and Gemmet that he was an on-duty King County Metro Transit Operator starting his next assigned shift and that the ORCA chip in his employee ID badge had malfunctioned. Deputy Azevedo continuously interrupted, demanding Mr. Kirkpatrick's driver's license.

4.10   As Mr. Kirkpatrick attempted to explain that his employee ID badge provided sufficient identification, Deputy Azevedo suddenly grabbed Mr. Kirkpatrick by the right arm and forcibly twisted both arms behind his back into handcuffs. Mr. Kirkpatrick felt a "pop" in his right shoulder as Deputy Azevedo applied the twisting force.

4.11   As Deputy Azevedo handcuffed Mr. Kirkpatrick, Deputy Gemmet asked "What are we doing?" and called a supervisor to the station.

4.12   Deputy Azevedo searched through Mr. Kirkpatrick's pockets and jacket, and seized Mr. Kirkpatrick's wallet which held his driver's license. He handed Mr. Kirkpatrick's driver's license to FEO Lindley, who issued a citation for failure to pay fare because of an inoperative ORCA card. Once FEO Lindley issued the citation, Deputy Gemmet released Mr. Kirkpatrick from the handcuffs.

4.13   Sergeant Eric White, the deputies' supervisor, then arrived. Sergeant White spoke with Deputies Azevedo and Gemmet, and then told Mr. Kirkpatrick he would not be jailed and offered to take an official complaint. Mr. Kirkpatrick stated he was concerned about the trustworthiness of Sergeant White and the deputies, and thus would not give an official complaint at that time.

COMPLAINT FOR DAMAGES - 5

No. %

11870.00 mh131208

MACDONALD HOAGUE & BAYLESS
705 Second Avenue, Suite 1500
Seattle, Washington 98104
Tel 206.622.1604  Fax 206.343.3961

4.14    Unprompted, Sergeant White then asked whether Mr. Kirkpatrick's reluctance was due to the incident in 2015, more than four years prior, in which two King County Sheriff's officers made false complaints in an effort to get him fired from King County Metro Transit. Mr. Kirkpatrick confirmed and exited Stadium Station.

4.15    Still later that day, Mr. Kirkpatrick's supervisors notified him that he was under investigation for "gross misconduct" as a result of alleged confrontations with FEOs Sigurdson and David Dao. Securitas, a private security company which employs Sound Transit FEOs, forwarded King County Metro Transit two incident reports allegedly describing Mr. Kirkpatrick's interactions with FEOs. Specifically, FEO Sigurdson claimed she recognized Mr. Kirkpatrick as the same King County Metro Transit employee who had ignored her request for proof of payment two months prior on February 20, 2019. Securitas also forwarded an incident report from FEO Dao, who described an interaction with an "unidentified Black Male adult" in a King County Metro uniform who refused to show proof of payment on March 13, 2019. Mr. Kirkpatrick immediately denied the allegations. Upon further investigation, the supervisors determined that Mr. Kirkpatrick was driving his assigned route during the times and dates of both alleged incidents.

4.16    Prior to the incident on April 15, 2019, Mr. Kirkpatrick was an avid power lifter. He had never experienced any issues with his shoulders. Deputy Azevedo's force caused trauma and stress in Mr. Kirkpatrick's right shoulder, damaging the shoulder cartilage and tearing the labrum.

4.17    Immediately following the incident, Mr. Kirkpatrick began physical therapy to treat the pain in his right shoulder. After three months, the pain was still unmanageable, and Mr. Kirkpatrick's doctors recommended that he undergo surgery to repair the damage. Mr. Kirkpatrick had surgery on August 7, 2019.

4.18    Deputy Azevedo's unlawful actions not only caused Mr. Kirkpatrick physical injury, but also emotional trauma and embarrassment. Deputy Azevedo confronted and yelled at Mr. Kirkpatrick in public, and several of Mr. Kirkpatrick's colleagues witnessed the interaction.

COMPLAINT FOR DAMAGES - 6

No. %

11870.00 mh131203

MACDONALD HOAGUE & BAYLESS
705 Second Avenue, Suite 1500
Seattle, Washington 98104
Tel 206.622.1604  Fax 206.343.3961

4.19     Additionally, the false reports by the Fare Enforcement Officers caused Mr. Kirkpatrick anxiety and mental anguish, as it resembled his near-termination more than four years earlier prompted by false complaints and retaliation by King County Sheriff's officers.

4.20     Mr. Kirkpatrick experienced emotional distress and mood swings in the aftermath of the incident on April 15, 2019 and constantly is concerned about drawing unwanted attention from law enforcement officials.

4.21     The unconstitutional actions by Deputy Azevedo caused Mr. Kirkpatrick severe physical pain, as well as extreme emotional and mental harm.

4.22     Deputy Azevedo seized Mr. Kirkpatrick when he grabbed and handcuffed Mr. Kirkpatrick.

4.23     Deputy Azevedo had no reason to believe that Mr. Kirkpatrick was engaged in or about to engage in criminal activity.

4.24     Deputy Azevedo lacked both reasonable, articulable suspicion and probable cause of criminal activity, and used excessive force when restraining and seizing Mr. Kirkpatrick. Because of Mr. Kirkpatrick's size and stature, Deputy Azevedo had to apply tremendous force on Mr. Kirkpatrick's arms to fit them into a single pair of handcuffs. Deputy Azevedo's use of force was unreasonable, unnecessary, and unconstitutional.

4.25     Deputy Azevedo violated Mr. Kirkpatrick's clearly established constitutional rights when he seized him and searched him, using excessive force, in violation of the Fourth Amendment.

## V.     CLAIMS

5.1     By virtue of the facts set forth above, Defendant Azevedo is liable for compensatory damages for deprivation of the civil rights of Plaintiff Kelvin Kirkpatrick guaranteed by the Fourth Amendment to the United States Constitution and 42 U.S.C. § 1983, to be free from unreasonable seizures. Defendant Azevedo is also liable for punitive damages for acting with malice, oppression, or reckless disregard for Plaintiff Kirkpatrick's Fourth Amendment rights.

COMPLAINT FOR DAMAGES - 7

No. %

11870.00 mh131208

MACDONALD HOAGUE & BAYLESS
705 Second Avenue, Suite 1500
Seattle, Washington 98104
Tel 206.622.1604 Fax 206.343.3961

## VI. RELIEF SOUGHT

WHEREFORE, Plaintiff requests relief as follows:

6.1 Compensatory damages for physical injury, pain, and suffering;

6.2 Compensatory damages for severe emotional distress and mental harm;

6.3 Compensatory damages for medical expenses;

6.4 Compensatory damages for lost wages during the period plaintiff was unable to work.

6.5 Punitive damages from Defendant Steven Azevedo on Plaintiff's claims under 42 U.S.C. § 1983;

6.6 Costs, including reasonable attorneys' fees, under 42 U.S.C. 1988 and to the extent otherwise permitted by law;

6.7 Leave to amend the pleadings to confirm the evidence at trial; and

6.8 Such other relief as may be just and equitable.

DATED this 30th day of September, 2019.

MacDONALD HOAGUE & BAYLESS

By: _____
Joe Shaeffer, WSBA #33273
joe@mhb.com
705 Second Avenue, Suite 1500
Seattle, WA 98104
Phone: (206) 622-1604

COMPLAINT FOR DAMAGES - 8

No. %

11870.00 mh131208

MacDONALD HOAGUE & BAYLESS
705 Second Avenue, Suite 1500
Seattle, Washington 98104
Tel 206.622.1604  Fax 206.343.3961